Please call the next case. 11325 v. Gerald Leahy v. D.H.O. Express Good morning, Your Honor. May it please the Court. Counsel. My name is Richard Alexey and I'm here on behalf of Mr. Gerald Leahy. I won't restate the facts. I know you diligently review those as well as the briefs and the record. I just want to make a couple of comments with regard to this record and this case. Mr. Leahy was a long-term employee for D.H.L., which was preceded in his work career by a company called Airborne Express. On the day in question, in September of 2009, he unloaded 40 70- to 80-pound packages, which required him to use a wheel dolly hidden in and out of the truck. And, of course, there was testimony about the length of his work days, as well as the number of stops and the number of times he had to drive, get out of the truck, get back in the truck. It's also stated in the briefs and it's mentioned in the footnote that there was a prior decision before this body relating to an injury in 2004, which involved his back and his left leg. On the day in question, which is the subject of this action, as you've read in the facts, the man unloaded these vehicles and he testified that he felt back pain in a twinge in his right knee, a semantical description of whatever meant to him pain, discomfort, weird feeling, whatever it might be. Ultimately, he determines that he has to seek medical treatment. He has to wait for his appointment. He sees Dr. Zindrick approximately nine or ten days after this event. Dr. Zindrick is a spine surgeon who concentrated on his low back, although he does document some complaints of knee pain. Let me just interject a quick question. Yes, sir. The arbitrator felt that because he claimed it didn't report any injury to his knees initially, that that was one of the reasons he found them? Your Honor, you have just stole my thunder in my third paragraph of this disquisition, and I appreciate you allowing me to accelerate. Yeah, as I break down this decision, and I read it again this morning on the train, the arbitrator takes two positions. Number one, that unless there is codified, carved in stone, documented with a chisel and marble, complaints of ill-being to every part of the body, then they're barred from any recovery. That seems to be the tenor of his reasoning in his causal connection section. The second part of that is he uses the word direct causal connection, directly caused it. And we see in Dr. Zindrick's records, as he comes back following various intervals of physical therapy, that this man starts to develop complaints of pain in his left knee as well as his right knee. In fact, it gets to such a point where Dr. Zindrick says, I want you to see my partner, Dr. Collins, who did your surgery some years ago on your left knee, who you saw about a year ago for synvis injection. There's no question this man had a bad knee. And you've seen this many, many times. You've seen a situation where a person suffers an injury or has a malady or has a complaint, has a problem, and he continues to work and he continues to work. In fact, if I'm not mistaken, the record shows that he wanted to continue to work until he had reached a certain level to get his full pension. The man was working on this day. There's no doubt they accepted the injury. They limited their acceptance, however, once it developed these knee pains to his back, and they stopped paying compensation. What's interesting about that theory, however, is as we know, the law in Illinois says if he develops a personal condition which impedes his ability to further heal and return to his level of maximum medical improvement or stability, they still have a liability for compensation. So while this tussle is going on as to whether or not there was causal connection or no causal connection, they simply stopped paying him. And the interesting thing that's very curious, and in fact the arbitrator devotes three sentences to this, is Dr. Cohn's report, Dr. Cohn's testimony. At no time does the doctor ever say, gee, I didn't know he had another injury. So at the end of that deposition, I'm thinking, well, the only competent medical evidence is going to be the treating records of Dr. Zindrig, the therapy reports where he has several incidents documented, and the therapy reports where he's complaining about the kinds of exercises he's doing. Ultimately, we take the deposition of Dr. Collins, and Dr. Collins says in response to a cross-examination question, well, yeah, if you look at his x-rays, it was worse, meaning I've known this guy and treated him since 2004. Now comes this 2009 incident. Coupled with the physical therapy, this is an accelerating factor. Nowhere in the record is that confronted or denied or attacked or overwhelmingly dealt with. The only evidence here is that the arbitrator says, well, since he didn't make these complaints contemporaneous with the day of the injury and since he had some vague complaints down in his knee, and I would submit to you which layman would know whether radicular pain in the right knee or it's a problem with the right knee is going to be this positive issue. The pathology was there. The condition worsened. So Cohen gives an opinion that the layman's current condition of the knees was the result of normal degenerative process, and yet he specifically then acknowledges he wasn't aware of the September accident? Yes, Your Honor, that's exactly correct. He said he had no idea. He was provided with no information. The arbitrator didn't buy his opinion either. No, he didn't. He said it's of little help. I agree. So the only opinion you've got is Collins? Collins is the only opinion on the issue, but the thing that troubles me the most is that arbitrator O'Malley or former arbitrator O'Malley continues to use the word direct relationship, direct. What happens with all the sequelae that happens to a gentleman of his age who does very heavy, demanding work? In fact, even Dr. Collins in his deposition said that back in 2008, I told him, you know, you ought to rethink this. You ought to find another occupation or retire. Are we going to punish this man? Are we going to say, sorry, Charlie, all of your loyal employment of 10 to 12 hours a day is for naught. You're done. We throw you on the trash heap. And you know what? You're on your own with all these maladies that have resulted from these long years of labor which consummated in September of 2009 when the body broke down. And then when you tried to remedy that condition, guess what? We find that the left knee is aggravated, the right knee is aggravated, and you're going to look at some significant serious surgery. Now, a counterargument to that will be, yeah, but why should the employer be responsible? Why should the employer have to buy his left knee and his right knee when he only complained initially of his back? Well, we know first of all that that's not true. But second of all, the real reason workers' compensation insurance exists in this country is to ensure that a man or woman who enters the workforce whenever that is, 15, 16, back in 07 when it was codified in New Jersey and New York, there were 13 and 14-year-olds, until they leave the workforce, our bodies are always subject to stresses. And the stress on Mr. Leahy and the demands and the benefit to his employer certainly is demonstrated adequately in this medical record that shows this guy is in deep trouble. And if we were all reasonable, logical people and we were to throw out the evidence, and I gave you a scenario similar to what happened to Mr. Leahy as a reasonable man, you'd say, well, it's got to be related to the work. He's killing himself. He's a dray horse. Arbitrator O'Malley says, sorry, you lose because it wasn't directly related. You didn't give good enough history. It would be better, I guess, if guys were able to take videos. You know, maybe we should all wear body cams and have all the workers have body cams so that when we come before this august body, you would be able to refer to that video and say, well, we saw it, and, you know, it was a 10-degree tilt and so on and so forth. I know it's a high mountain to climb to ask you to turn this decision around and send it back to the commission to do the right thing. But I think the evidence supports that climb. Like a serpa who can get me to the top of Everest, I think Dr. Collins and the medical record support a conclusion contrary to what the commission affirmed from the arbitrator. Any questions? I don't believe there are. Thank you, Counsel. Counsel, you may respond. Good morning. May it please the court. My name is Peter Lappin on behalf of Defendant Appley DHL Express. The standard of review for this matter is the manifest weight of the evidence. The commission is the ultimate decision maker, and no review in court should reverse the commission's decision unless the decision is completely contrary to the manifest weight of the evidence. The commission resolves disputes of facts and draws reasonable inferences from them, including where the evidence is conflicting. A review in court will not substitute the judgment of the commission and will not discard permissible inferences drawn by the commission merely because it may have determined another inference. Did the commission adopt the decision of the arbitrator? It did. Did the arbitrator use the phrase direct evidence? I cannot recall specifically if that was the phrase used by Arbitrator O'Malley. Well, here's my question. Isn't it a well-settled mistake that in order for the injury to be compensable, it does not have to be the sole cause or the only cause of the claimant's condition? If it is a causative factor, isn't it compensable? The laws do establish that. However, there are exceptions to that rule. What are the exceptions that apply to this case? Well, first of all, in this case, the facts clearly show, and the commission determines that the plaintiff in this case did not suffer a causative factor to accelerate his preexisting degenerative condition. What are they based on, Cohen's opinion? They're based on the fact that there was no mention of acute bilateral injury in any of the initial treating records. Does there have to be? Well... This man's whole theory is he developed trouble with his knees during physical therapy, physical therapy for an obviously compensable injury. So if he develops difficulty with his knees when he's undergoing physical therapy for a compensable injury, then injury to his knee is compensable. That's not necessarily true as far as what the plaintiff testified to. His last statements on direct exam were that his knees were not injured. I'm sorry, strike that. You have a brief here that says, He did not suffer a sudden bilateral knee change after September 9th. Does it have to be sudden? He did not suffer. I think before we get to that, we need to address the fact of the preexisting state of his knee condition. Mr. Laney had a significant... You're assuming his knee was in fine shape before he started the physical therapy for his back. If the physical therapy for his back caused injury to his knee, it's compensable. There's no question about that. The issue is that Mr. Laney made no mention of any type of incidents during physical therapy. He made no mention of any bilateral... Before we even get to the physical therapy, he made no mention of bilateral knee pain during his initial treatment with Dr. Zendrick or his follow-up treatment with Dr. Zendrick. In fact, he said at his initial treatment that his pain was in the... because his knees were causing him pain. That's in Zendrick's notes. Actually, what Dr. Zendrick said was that the left knee pain was bothersome for him when he tried to do his therapy. He did not say that the therapy caused the... Claimant testified that he began experiencing knee pain while undergoing physical therapy for his spine. In addition to that, you've got a therapist report dated October 1st, 2009, noting that the claimant reported having a lot of tightness in his left knee after their previous session. Now, why couldn't... I mean, I don't understand how you can suggest that this physical therapy has nothing to do with his knee problem. At the conclusion of the plaintiff's testimony on direct exam, he specifically said that he had no injuries to the right knee or left knee since September 9, 2009. He didn't injure them. I don't think you understand. He didn't have a sudden injury, like I fell down and hurt my knee. What he's testified to and what the notes say is that the physical therapy itself caused the injury to his knee. And it's progressive. It's over a period of time. It didn't happen just like that, like falling off a log. And second of all, I noticed your brief. It's a little light on citations. It doesn't have any, except for commenting on the standard of proof and also commenting on several cases cited by your opponent. You go pages and pages without a cite. Do we do your research for you? Or are you supposed to do the research for us? I believe the cases that I cited help support... You didn't cite any cases. Plaintiff did not suffer a sudden knee change due to the incident. We go from page 11 to page 12. And you comment on your opponent's case of Rio versus the Industrial Commission, but don't cite any cases of your own. You've got a statement, you're only entitled to TTD for 20 and five-sevenths weeks, both from page 12 to 13. Don't cite a single case. Plaintiff's medical in need for future treatment unrelated to September 9th. No cases. And I can go backwards and get you some more pages, but I think you're supposed to cite cases in support of the propositions you want us to address. At least I think that's what the Supreme Court rule says. Well, again, I believe that the argument speaks for itself on the facts, and the cases that I cited do support an affirmation of the Commission's decision. Going back to your point for the physical therapy developing Mr. Leahy's problems, again, you brought back the October 13, 2009 medical record. At that time, the plaintiff told Dr. Zunich that he had trouble performing physical therapy exercises because of the pain in his knees. He did not complain about a specific incident, just that he had difficulty following the therapist's instructions. Well, let's stop right there. I just want to ask you a question. Does the claimant have to articulate if the physical therapy is the cause of his condition of ill-being? If he's relating complaints about his knees, does he need to be able to attribute them to a specific source to be compensated? The claimant is a layperson. He's not a doctor. I think he needs to be able to cite to either a specific incident of September 9, 2009, as causing his bodily pain. The claimant needs to cite to a specific incident? He needs to identify that. Dr. Collins did. Dr. Collins said he opined that the September 9, 2009 accident and the ensuing course of physical therapy were factors that contributed to his recommendation that the complainant get knee replacement surgery now. He also testified that, again, before we get into that, we still need to address the fact that the plaintiff here had significant pre-existing degenerative knee condition. That doesn't stop me. It doesn't have to be the primary cause. It doesn't have to be the only cause. It only needs to be an A cause. Dr. Collins says it was. Dr. Collins also said that regardless of whether the plaintiff returned to work, he was going to need the knee replacements. Don't we have an acceleration opinion, though, that he accelerated the condition? Maybe it was Collins? It was Collins. Isn't that an essence? Again, I feel that Dr. Collins... I mean, there's no contrary medical opinion. There's none. Collins was disbelieved by the arbitrator, so you don't have Collins' opinion. He didn't even know about the September 9 accident. Dr. Collins agreed with Dr. Collins that the gentleman had pre-existing... We know he has osteoarthritis. There's no question about it. So what? If the physical therapy for his back contributed to the need for knee replacement surgery, as Collins said, my difficulty with this is there is no contrary opinion to Dr. Collins. And so it goes unrebutted. And if it's unrebutted, it would occur to me that the conclusion opposite to that reached by the arbitrator and the commission may very well be apparent. The issue is that this gentleman still makes no specific reference to a knee injury. Physical therapy. We've been that route. He goes into physical therapy, and he makes no mention of a specific incident of injuring himself in physical therapy. Well, then how did the medical opinion come into being by the physician that there was an acceleration due to physical therapy, if that's a fair statement of the opinion? It had to come from somewhere. Again, the fact is that the commission relied on the facts where Dr. Collins testified that... Even if the plaintiff was walking around the house playing golf or doing normal activities, his condition was going to worsen. It didn't have to have anything to do with him even being in physical therapy. He could have just been walking around doing normal activities, and his condition would have worsened. Do you realize what you're saying? Even if that's true for the sake of the argument, as it were, if there's an acceleration, doesn't that make it compensable? It doesn't matter what would have happened in the future. Your argument is the argument that I signed on to in CISPRO, and it got reversed by the Supreme Court. The exact argument you're making is the argument that I signed on to in CISPRO. It's contrary to the CISPRO case. In CISPRO, the gentleman had an underlying foot condition. He stepped into a pothole. We understand what CISPRO's facts are. The fact of the matter is the Supreme Court said that it's a question of fact as to whether this event that occurred caused or contributed to his need for medical treatment, as opposed to it merely being a natural progression of a preexisting condition. And that's a question of fact. But in this particular case, there's no contrary evidence. Collins says it was. Zindrig puts in his notes that the claimant reported he was unable to perform physical therapy because his knees were causing him pain. He testifies that he began experiencing the pain while undergoing physical therapy. And the physical therapist says that the claimant reported having a lot of tightness in his left knee after the previous session. So my question is, where's the contrary evidence? Well, a lot of those facts are contradictory. If the plaintiff was making knee complaints on September 9, 2009, which he testifies to, how did his knees then start to hurt in physical therapy? Pardon me? The plaintiff here, he's alleging that he injured his knees on September 9, 2009. No, he's alleging that he injured his knees in physical therapy for a back condition that occurred on September the 9th. He testified that on the day of the accident, he was moving a box and he felt a twinge and something popped in his right knee. And then he later rescinded that statement on cross-examination when it was pointed out to him that he made no reference of any type of popping or twinging in his knee in the very first records of Dr. Zindrig. And, again, you know, I want to get back to you. When you say he rescinded his statement, did he say, oh, what I said earlier is not true? He agreed that the medical records from Dr. Zindrig did not reference – And he didn't rescind his earlier testimony. He simply said, maybe I said something different to the doctor. But he didn't rescind his earlier testimony. That question wasn't specifically – Is that a fair characterization of what happened? It's a fair characterization that he testified that he felt something pop and then later he changed his testimony. I'm curious about Dr. Cullen. Dr. Cullen's hired by the employer, right? That's correct. And how is it that he proceeds to do an IME and he doesn't know about the accident? Again, this is a pretty distinct condition. Dr. Cullen conducted an IME on this gentleman years prior and he was sent for a follow-up IME. To tell you what he was advised of in advance of the IME, I cannot say. Dr. Cullen testified that he got the gist from Mr. Leahy that he had suffered a second accident in September of 2009. Counselor, your time is up. Thank you. Thank you. Counselor, you may – I don't believe there are questions in the court. I don't believe there are. Thank you. Thank you, counsel, both for your arguments in this matter. This will be taken under advisement. This position shall issue.